**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11754

_____

CHANTELE FOSTER,
JEREMY FOSTER,

*Plaintiffs-Appellees,*

*versus*

KEVIN EMBERG,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 6:22-cv-01275-ACA

_____

Before KIDD, DUBINA, and WILSON, Circuit Judges.

PER CURIAM:

The issue presented in this interlocutory appeal is whether the district court erred when it found that Appellant Deputy Emberg was not entitled to state immunity under Alabama law with

respect to the Fosters' claims seeking damages against him individually for malicious prosecution.  After reading the parties' briefs, and with the benefit of oral argument, we affirm the district court's order denying Deputy Emberg's motion to dismiss based on state sovereign immunity grounds.

## I.    BACKGROUND

### A. Facts[1]

Chantele Foster, a paralegal, and Jeremy Foster, a probation officer, were married and resided in Walker County, Alabama, with Ms. Foster's two minor sons from a previous marriage.  On October 14, 2020, on their way to dinner, the couple started to argue, cancelled their dinner plans, and returned home, where the argument continued.  Mr. Foster went into his bedroom where he began inspecting his authorized service weapon. Ms. Foster entered the bedroom and informed Mr. Foster that the weapon did not scare her.  One of Ms. Foster's sons heard the comment and called 911.  While her son was calling 911, Ms. Foster decided to take both children to her parents' house to allow the argument to cool.  Ms. Foster took the telephone from her son and informed the operator that all was well, and she tried to cancel the call. When she started to leave the house with her sons, four sheriff's

---

[1] The facts in this case come from the allegations in the Fosters' amended complaint, which on review of a motion to dismiss, we must accept as true.  *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

patrol cars pulled into her driveway and blocked her car from leaving.  Ms. Foster got out of her car, told the deputies nothing was wrong, and asked them to leave.

Deputy Emberg, the senior deputy on the scene, informed Ms. Foster that they were not leaving because there had been a domestic call involving a weapon.  Deputy Emberg entered the house and spoke to Mr. Foster, who stated that he and his wife had an argument, but nothing happened that required the deputy's assistance.  Deputy Emberg, according to the Fosters, appeared agitated and believed that Ms. Foster was the aggressor.  He told Ms. Foster to leave, and if she returned to the house, she was going to jail.  He sent Deputy Legg, a junior deputy, with Ms. Foster into the house to gather her belongings, and while inside the house, Deputy Legg turned off his body camera and apologized for Deputy Emberg's behavior.  Deputy Emberg did not make a report of the incident, as required by department policy, and directed Ms. Foster and her children to leave the premises.

The next day, the Fosters decided to separate and agreed that Mr. Foster would leave the house, and Ms. Foster and the children would stay at the residence.  Ms. Foster called a friend at the city police department who informed her that Deputy Emberg should have made a report of the incident from the previous night.  Ms. Foster contacted Deputy Emberg's commanding officer, Captain Shane Taylor, and left a message regarding the lack of a report of the incident.  At some point, the Fosters began speaking to each

other again, and Ms. Foster told her husband about her conversation with her police department friend, and they decided that Ms. Foster would file a written complaint against Deputy Emberg.

On October 16, 2020, Deputy Legg, who had been present at the initial 911 call, went to the Fosters' house to make a report. Deputy Legg told Ms. Foster that if she had any problems with Mr. Foster, to call him and he would help her.  Later that evening, Ms. Foster left the house to take some items to her sons, who were staying with her parents, and upon her return, she saw Mr. Foster preparing to take a recently purchased lawnmower from the house. She called 911 and asked for Deputy Legg.  The operator told Ms. Foster that Deputy Emberg was on the way, and Ms. Foster told the operator that she did not want Deputy Emberg on her property and ended the call.

Deputy Emberg and Deputy Legg arrived, and when Deputy Emberg entered the house, he overheard Ms. Foster talking on the phone to her mother saying that Mr. Foster wanted to stay married, but she did not, and that Mr. Foster was taking things from the house that he had not purchased.  According to Ms. Foster, Deputy Emberg allegedly told her that she should not have called 911 because her situation was civil in nature.  Ms. Foster mentioned to Deputy Emberg that Deputy Legg told her to call him if there was a problem, and Deputy Emberg then chastised Deputy Legg for saying that to Ms. Foster.  Deputy Emberg asked Deputy Legg

how he was going to handle the matter, to which Deputy Legg responded that he was going to have Mr. Foster take only his personal items and leave.

Mr. Foster did not agree with the resolution proposed by Deputy Legg. Mr. Foster told Deputy Emberg that Ms. Foster was filing a complaint against him with the Sheriff because Ms. Foster said that Deputy Emberg "bullied" her the night of the first 911 call. Deputy Emberg responded, "oh really," and returned to the house where he then arrested Ms. Foster. Deputy Legg was surprised by Deputy Emberg's actions. Mr. Foster told Deputy Emberg that he could not arrest Ms. Foster for filing a report against him. Deputy Emberg told Deputy Legg to arrest Mr. Foster, too, and they transported the Fosters to the county jail. Once at the jail, a senior investigator began arguing with Deputy Emberg for wrongfully arresting the Fosters. The Fosters remained in jail for the evening, and the next day were released on a signature bond.

## B. **Procedural History**

On October 27, 2020, Deputy Emberg filed criminal charges against the Fosters for domestic violence/harassment. According to the Fosters, Deputy Emberg claimed that Ms. Foster's crime was stating to her husband that "he needed to powder his vagina," and Mr. Foster's crime was calling Ms. Foster a "bitch." The Fosters claimed that Deputy Emberg's allegations in the arrest report were fabricated and that he thereafter disparaged their reputation in the community. They also claimed that Deputy Emberg wanted to ruin Mr. Foster's reputation in the hope that Mr. Foster would be

6                        Opinion of the Court                    24-11754

fired, thus opening a position in the probation office for which Deputy Emberg would apply. The Fosters claimed that because of the charges and the damage to their respective reputations, Mr. Foster was not promoted and did not receive a raise for three years, and Ms. Foster had to leave her job as a paralegal.

In November 2020, the District Attorney and the Fosters' lawyer asked the state district court to dismiss the criminal charges against the Fosters, who had separate cases, and the court granted the motions. After the initial dismissal, the state requested that the court hold a hearing because the state did not fully represent its initial position, and Deputy Emberg wanted the court to hear him explain what happened at the Fosters' house. Subsequently, the court held a hearing and then entered a second order dismissing the charges with prejudice.

The Fosters then filed a multi-count complaint under 42 U.S.C. §1983 against Deputy Emberg in his individual capacity. The district court granted in part, and denied in part, Deputy Emberg's motion to dismiss, including the malicious prosecution claim. Deputy Emberg lodged an appeal from the district court's order denying his motion to dismiss the malicious prosecution claim.

## II.    STANDARD OF REVIEW

This court reviews *de novo* the district court's denial of a motion to dismiss based on state sovereign immunity. *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009). "In addressing issues of state law, we are bound by the decisions of the state supreme court." *Id.* at 1263-64. This court must accept as true the factual

allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "The plaintiff's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal quotation marks and alterations omitted).

## III.   ANALYSIS

Alabama law provides that Deputy Sheriffs are extensions of the Sheriff, who is a constitutional executive officer. *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987) (stating that a sheriff is an executive officer of the State of Alabama and is immune from suit); s*ee also Ex parte Burnell*, 90 So. 3d 708, 711 (Ala. 2012) (reinforcing case law that deputy sheriffs are immune from suit to the same extent as sheriffs); *Ex parte Donaldson*, 80 So. 3d 895, 899 (Ala. 2011) ("Because sheriffs are constitutional officers and because deputy sheriffs act on behalf of sheriffs as alter egos, a claim for monetary damages made against a deputy sheriff in his or her individual capacity is barred by the doctrine of State immunity whenever the acts that form the basis of the alleged liability were being performed within the line and scope of the deputy sheriff's employment.").

In its opinion, the district court relied on *Ex parte Pinkard*, 373 So.3d 192 (Ala. 2022), in denying Deputy Emberg immunity. Deputy Emberg contends in this appeal that the district court improperly relied on *Ex parte Pinkard* because that case did not concern deputy sheriffs; rather, it dealt with a state employee whose

position was created by legislative enactment. *See Hight v. Smith*, 2022 WL 17178660, at *4 n.2 (N.D. Ala. 2022) (stating that *Pinkard* overruled a recent series of cases that dealt with other types of state officials but did not purport changing the longstanding special status of sheriffs and their deputies). Although we agree with Deputy Emberg that the district court applied the wrong analysis, we conclude that at the motion to dismiss stage, an analysis under the correct standard would garner the same result, and we affirm the district court's order denying the motion to dismiss as to the malicious prosecution claim against Deputy Emberg.

Since the district court's decision in the present case, the Alabama Supreme Court decided *Ex parte Underwood*, ___ So.3d __, 2025 WL 1776225 (Ala. June 27, 2025). In that case, the Alabama Supreme Court reiterated that its prior decisions have held that deputy sheriffs are immune from suit to the same extent as sheriffs, and are entitled to immunity from individual capacity claims for damages "whenever the acts that form the basis of the[ir] alleged liability were being performed within the line and scope of the[ir] employment." *Id. at* * 4 (quoting *Ex parte Donaldson*, 80 So.3d at 899 (alterations added). In *Underwood*, the state supreme court noted that nothing in the plaintiff's complaint suggested that the deputy sheriff was acting outside the scope of his employment or acting pursuant to some personal motive. *Id. Underwood* is distinguishable from the present case because the Fosters alleged that Deputy Emberg did act outside the scope of his employment when he arrested and filed criminal charges against them. They assert that Deputy Emberg was acting with personal animus.

Thus, we conclude this case is analogous to *Ex parte Haralson*, 853 So.2d 928 (Ala. 2003), where the Alabama Supreme Court denied the deputy state immunity because it was conceivable that the plaintiff could show that the deputy "was on a personal errand or otherwise had departed from the line and scope of his employment at the time of the alleged tortious conduct." *Id*. at 933. Likewise, in the present case, it is conceivable that the Fosters could prove facts showing that Deputy Emberg "had departed from the line and scope of his employment" at the time of the alleged tortious conduct, and Deputy Emberg did not offer any evidence to foreclose this possibility. Deputy Emberg claimed that he had the authority to arrest the Fosters, which is an act within the line and scope of his duty. The Fosters contend, however, that he arrested and filed criminal charges against them because of his own animus and personal motive. *See Brown v. Smith*, No. 6:24-CV-1001-GMB, 2025 WL 439820, at *5 (N.D. Ala. Feb. 7, 2025) (denying state immunity because at the motion to dismiss stage, it remained unclear whether the plaintiff could prove that the defendant acted with malice or tortiously).

In the present case, as in *Brown v. Smith*, it remains conceivable at this stage in the proceedings that the Fosters could prove that Deputy Emberg's actions were personally motivated or outside the line and scope of his employment. *See Haralson*, 853 So. 2d at 933. In fact, the present appeal is based on allegations made in the Fosters amended complaint that Deputy Emberg was not acting in the line and scope of his authority when he arrested the Fosters but was acting for his own personal reasons, and that the arrest and

subsequent criminal charges were based on false and contrived grounds.  Importantly, even Deputy Emberg referred to the conflict between the Fosters as "civil" in nature, not "criminal."  It is also plausible from the allegations in the amended complaint that Deputy Emberg arrested Ms. Foster as punishment for telling his supervisor that he did not file a report of the initial incident, which he should have done.

In conclusion, we affirm the district court's order denying the motion to dismiss and its finding that Deputy Emberg is not shielded by state immunity because it is plausible from the allegations in the amended complaint that Deputy Emberg acted outside the line and scope of his duties when he arrested and filed criminal charges against the Fosters.

AFFIRMED.[2]

---

[2] Nothing in this opinion precludes Deputy Emberg from filing a motion for summary judgment after discovery, again contending he is entitled to state immunity, if it is shown that the allegations made in the amended complaint by the Fosters are not true.